THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| WORLDWIDE MACHINERY, INC., a Texas Corporation, | ) | Case No. 2:06CV130 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER |
| WALL MACHINERY, INC., a Utah corporation; and TRENT WALL, an individual, | ) ) ) | |
| Defendants. | ) ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

On February 12, 2005, Worldwide and Wall Machinery signed a written "Contract of Sale" for the sale by Wall Machinery to Worldwide of three large Caterpillar Model 789B trucks. The price was set at $2,700,000 with a commission to be determined later. The trucks first had to be released by the mine owners, and the released date was not certain when the contract was signed. Wall refused to deliver the trucks to Worldwide and sold them to another party. Worldwide sued for breach of contract and fraud. Wall has filed this motion to dismiss, arguing that the contract is not enforceable because it lacks the necessary material terms. Wall also argues that the fraud claim is barred by the economic loss rule and by the fact that the elements were not plead with particularity. The Court disagrees and hereby denies Wall's motion to dismiss.

Wall Machinery filed its original Motion to Dismiss on April 12, 2006. In its May 11, 2006 Reply Memorandum in Support of the Motion to Dismiss, Wall Machinery included a motion to strike a number of factual allegations that were included in Worldwide's opposition brief but not in the original complaint. On June 7, 2006, Worldwide filed its Amended Complaint. Wall Machinery has conceded that Worldwide's Amended Complaint renders moot Wall's Motion to Strike the unsupported factual allegations in Worldwide's Response in Opposition to Motion to Dismiss. On July 20, 2006, Wall Machinery filed a Motion to Dismiss Amended Complaint. It is this motion that is now before the court.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), F. R. Civ. P., the Court must accept as true all factual allegations in the Complaint and must resolve all reasonable inferences in the plaintiff's favor. *Arnold v. McClain*, 926 F.2d 963, 965 (10th Cir. 1991). The motion will be granted only if it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Id. See also, Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1502 (10th Cir. 1995). Dismissal under rule 12(b)(6) is a "harsh remedy" which must be cautiously applied "to protect the interests of justice." *Bangerter*, at 1502.

## III. ANALISYS

**A. Worldwide has plead sufficient facts in support of its breach of contract claims to overcome a 12(b)(6) motion.**

Wall argues that the contract in this case is unenforceable because on its face it lacks the material terms necessary to form an enforceable contract. The material terms that are missing from the contract, according to Wall, are the price (the commission and the criteria for its determination) and the payment terms (when the commission would be paid).

Wall argues that Worldwide's allegations regarding the commission to be paid have changed with each of its pleadings. In the original complaint, Worldwide alleged that it had agreed to pay a "reasonable commission" based upon the "sales success" of the resale of the trucks. In its opposition to the Motion to Dismiss, Worldwide alleged that "the parties specifically discussed reasonable commission of 5%." And in the Amended Complaint, Worldwide alleged that Wall "agreed to the five percent (5%) commission." According to Wall, Worldwide's "evolving and inconsistent allegations" regarding the commission amount prove that the parties did not agree on the commission amount or how it was to be determined. And because the parties did not agree on a reasonable price or a method for determining one, Wall argues that the agreement is too indefinite and uncertain for enforcement.

The Court is not persuaded. Although some of the contract terms were left open, the Court finds that the contract does not fail for indefiniteness, because there is ample evidence that the parties intended to make a contract, and because there is a reasonably certain basis for giving an appropriate remedy.

3

In construing a contract, the intent of the contracting parties controls. Utah courts have held that if the language of the contract is ambiguous, the court may look at extrinsic evidence of the parties intentions. *Peterson v. Sunrider Corp.,* 48 P.3d 918, 925 (Utah 2002). In the present case, accepting as true the plaintiff's allegations, there is evidence that the parties discussed a reasonable commission of 5%. In any event, if the contract is incomplete or ambiguous, as Wall asserts, then parol or extrinsic evidence may be necessary to determine the parties' intent, and dismissal would be inappropriate at this stage.

The Court finds that the Uniform Commercial Code governs the sale of the trucks in this case. Wall Machinery's argument that U.C.C. Article 2 does not apply to this transaction because Wall served only as a broker and did not take title to the trucks, is unpersuasive. The plain language of the contract shows that it was a contract for the sale of goods. The contract states that "Wall Machinery, Inc. agrees to *sell* and Worldwide Machinery agrees to *buy*" the trucks. The contract also refers to "the company from whom Wall Machinery, Inc. *purchased* the trucks" (emphasis added). UCC Article 2 clearly applies.

Utah Code Ann. § 70A-2-204(3) specifically provides:

> Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

In this case, both parties signed the contract whereby Wall Machinery agreed to sell the trucks to Worldwide at the specified price of $2,700,000. The open terms regarding the commission on future resale and the time for delivery do not cause the contract to fail for indefiniteness. The UCC provides that parties to a contract "can conclude a contract for sale even though the price is

not settled." *Utah Code Ann.* § 70A-2-305(1). So long as the quantity of goods is specified (the three trucks in this case), a missing price term does not affect the validity of the contract. The Utah Supreme Court has noted that "the role of the court as 'gap filler' is neither new nor revolutionary":

> If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left.

*U.C.C. § 2-204, Official Comment to Subsection (3).* Accepting as true all the factual allegations in the Amended Complaint, the court finds that there is sufficient evidence that the parties in this case intended to make a contract. Factual issues, like those dealing with the amount and payment terms of the commission, will require consideration of all the evidence, and therefore, require denial of the motion to dismiss.

## B. Worldwide has plead the elements of fraud with sufficient particularity.

Rule 9(b), Fed. R. Civ. P., requires "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To allege a viable claim for fraud, plaintiffs must "set forth in specific terms the time, place, content, and manner of each defendant's alleged material misrepresentations or otherwise fraudulent conduct." *Cook v. Zions First Nat'l Bank,* 645 F.Supp. 423, 424-425 (D. Utah 1986). In order to prevail on its fraud claim, Worldwide must prove that the material misrepresentations were made with the intent to defraud. Wall Machinery argues in it motion to dismiss, that Worldwide's allegations regarding intent are mere speculation, and that "Worldwide alleges no other *facts* to sustain this essential element of intent."

Again, the court disagrees. Worldwide has made numerous, specific factual allegations regarding the circumstances of the alleged fraud and the defendant's intent, including the following. Wall represented he had purchased the trucks from the Chilean company and that Wall would sell and deliver the trucks to Worldwide. Wall provided Worldwide with a copy of Wall's invoice for Wall's purchase of the trucks. Wall represented that it would provide an invoice reflecting the sale of the trucks by Wall to Worldwide. Wall's representations were false, and Wall knew the representations were false, at the time they were made. Wall never intended to sell the trucks to Worldwide. Wall had already sold the trucks to a third party. Later, when confronted, Wall falsely represented that the trucks sold to another company were different trucks and not the trucks Wall agreed to sell to Worldwide. This representation was false and known by Wall to be false when made. Wall urged Worldwide not to make further inquiry and not to take any further action regarding the trucks and falsely assured Worldwide that it would receive the trucks. Worldwide reasonably relied upon Wall's misrepresentations by foregoing further efforts to obtain similar trucks for resale in the active market of the time.

Wall Machinery argues that Worldwide's reliance was unreasonable, because the market was "extremely active and profitable" and Worldwide could have obtained similar trucks by continuing its search. Wall offers no explanation as to why Worldwide would have felt the need to try and obtain similar trucks, if it believed it had already purchased three trucks. At a minimum, these are factual issues which preclude dismissal under Rule 12(b).

Wall Machinery also argues that Worldwide relied on the alleged contract, not solely on the alleged misrepresentations of the defendant, in suspending its efforts to find other trucks. Therefore, according to Wall, "Worldwide's Amended Complaint fails to establish that it relied

upon the defendants' misrepresentations, which is an essential element of it fraudulent misrepresentation claim." Wall provides no support for its illogical conclusion that because Worldwide relied on the contract *and* the defendants' misrepresentations, it did not rely on the defendants' misrepresentations.

Finally, Wall Machinery argues that Worldwide fails to plead how it was damaged by the alleged misrepresentations. Again the court disagrees. Worldwide alleges that after Wall sold the trucks to a third party, the trucks were sold to a series of subsequent buyers at great profits exceeding $1,800,000. All the subsequent buyers were companies known to Worldwide and to which Worldwide could have sold the trucks. Absent Wall's fraud, Worldwide would have obtained similar trucks from another source and participated in the resales and realized such profits. Clearly, Worldwide has plead sufficient damages to overcome a motion to dismiss its fraud claims.

## C. The Economic Loss Doctrine does not bar Worldwide's Fraud Claims.

Wall Machinery argues that Worldwide's claim for fraudulent misrepresentation is barred by the economic loss rule. In Utah, the economic loss doctrine bars all tort claims that are not based on a duty independent of any contractual obligations between the parties. *Town of Alma* v. *Azco Constr. Inc.*, 10 P.3d 1256 (Colo. 2000), *Harmansen v. Tasulis,* 2002 UT 52, 48 P.3d 235, *Grynberg v. Questar Pipeline Co.,* 469 Utah Adv. Rep. 13, 20 (Utah 2003). Once the parties have entered into a contract, "any tort claim must be premised upon an independent duty that exists apart from the contract. All contract duties, and all breaches of those duties–no matter how intentional–must be enforced pursuant to contract law." *Grynberg*, at ¶43.

7

Wall Machinery argues that Worldwide alleged it relied on the contract and representations of Trent Wall and Wall Machinery in deciding not to search for other trucks. Also, Worldwide's claim for fraud damages in the amount of $1,800,000 is the same amount it claims for its breach of contract claim. Therefore, according to Wall, Worldwide's tort claim is based on contractual duties and recites the same operative facts as Worldwide's breach of contract claim, so the tort claim is barred by the economic loss doctrine and must be dismissed.

It is fundamental, however, that a claim for fraud in the inducement cannot be barred by the economic loss doctrine. The doctrine only applies to bar tort claims that fall within the "bargained-for duties and liabilities" of a contract. *Grynberg,* at 18. The Tenth Circuit has stated:

> Where a negligence claim is based only on breach of a contractual duty, the law of contract rightly does not punish the breaching party, but limits the breaching party's liability to damages that naturally flow from the breach. It is an altogether different situation where it appears two parties have in good faith entered into a contract but, in actuality, one party has deliberately made material false representations of past or present fact, has intentionally failed to disclose a material past or present fact, or has negligently given false information with knowledge that the other party would act in reliance on that information. . . . The breaching party in this latter situation also is a tortfeasor and may not utilize the law of contract to shield liability in tort for the party's deliberate or negligent misrepresentations.

*United International Holdings v. Wharf Limited,* 210 F.3d 1207 (10th Cir. 2002). In this case, Worldwide alleges that Wall Machinery deliberately made material false representations, knowing that Worldwide would, in reliance on those representations, enter into the contract to purchase the trucks.

In addition, Worldwide alleges that on March 3, 2005 Trent Wall and Wall Machinery made material false representations regarding the identity of the trucks sold to another company. Trent Wall allegedly also represented that further inquiries by Worldwide to other companies could jeopardize the sale to Worldwide. Amended Complaint ¶70. Worldwide alleges that Trent Wall made these representations to induce Worldwide's reliance in not making further inquires regarding the trucks. As a direct and proximate cause of the fraudulent misrepresentations allegedly made by Trent Wall and Wall Machinery, and Worldwide's reliance thereon, Worldwide was effectively taken out of the active market for the trucks and competition in such market. Amended Complaint ¶74. The fraud claim in this case goes beyond the bargained for duties and liabilities of the contract; therefore, the economic loss rule does not apply.

It should also be noted that in any case, the economic loss rule would not apply to the fraud claims against Trent Wall where he was not a party to the Wall Machinery contract. The fraud claims against Trent Wall personally are independent of the breach of contract claims against Wall Machinery. For the foregoing reasons, the court holds that Worldwide's fraud claims are not barred by the economic loss rule.

## VI. CONCLUSION

For the foregoing reasons Defendants Wall Machinery Inc. and Trent Wall's Motion to Dismiss Amended Complaint (Docket #17) is hereby denied. The Court also notes that the

9

Amended Complaint and this Decision render moot Defendants' original Motion to Dismiss (Docket #5) and Motion to Strike (Docket #14).

SO ORDERED.

DATED this 12<sup>t</sup> day of September, 2006.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT